JONAH P. BROWN
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044
Jonah.brown@usdoj.gov

RANDY TANNER
Chief, Civil Division
District of Montana
Randy.Tanner@usdoj.gov

JONATHAN MORGAN
Legal Counsel
State of Montana
Department of Environmental Quality
PO Box 200901
Helena, MT 59620-0901
JMorgan3@mt.gov

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MONTANA**
**MISSOULA DIVISION**

---

UNITED STATES OF AMERICA

and,

STATE OF MONTANA                           Civil Action No. _____

          Plaintiffs,

    v.

COLUMBIA FALLS ALUMINUM
COMPANY, LLC,

          Defendant.

---

## COMPLAINT

The United States of America, by authority of the Attorney General of the

United States and acting at the request of the Administrator of the United States

1

Environmental Protection Agency ("EPA"), and the State of Montana (hereafter "State") at the request of the Montana Department of Environmental Quality ("MDEQ"), file this Complaint and allege as follows:

## NATURE OF ACTION

1. This is a civil action against Defendant Columbia Falls Aluminum Company, LLC ("Defendant"), pursuant to Sections 106, 107, and 113 of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended ("CERCLA"), 42 U.S.C. §§ 9606, 9607, and 9613, and the Montana Comprehensive Environmental Cleanup Act ("CECRA"), Sections 701 through 757, Mont. Code Ann. §§ 75-10-701 through 757.

2. Under Sections 106(a) and 107(a) of CERCLA, 42 U.S.C. §§ 9606(a), 9607(a), the United States and State seek injunctive relief and recovery of response costs that have been and will be incurred through conducting response activities in connection with the release or threat of release of hazardous substances at the Anaconda Aluminum Co. Columbia Falls Reduction Plant Superfund Site (also known as the Columbia Falls Aluminum Company Superfund Site) near Columbia Falls, Montana ("Site"). In addition, under Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), the United States and State also seek a judgment declaring that Defendant is liable for any future response costs to be incurred because of

releases or threatened releases of hazardous substances at or in connection with the Site.

3.     Further, the State, under Sections 711, 715, and 722 of CECRA, Mont. Code Ann. §§ 75-10-711, 715, and 722, seeks to abate an imminent and substantial endangerment to the public health, safety, and welfare and the environment posed by the facility, and to recover response costs.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over the subject matter of this action and over Defendant, under 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. §§ 9606(a), 9607, and 9613(b). This Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a).

5.     Venue is proper in this district under 28 U.S.C. § 1391(b) and (c), and 42 U.S.C. § 9613(b), because the Site is located, the claims arose, and the threatened and actual releases of hazardous substances that gave rise to the claims occurred, within this judicial district.

## THE PARTIES

6.     The United States is authorized to seek costs of removal or remedial action, as well as injunctive relief necessary to abate the imminent and substantial endangerment to the public health or welfare, or the

3

environment, that may result from an actual or threatened release of a hazardous substance at or from a facility. 42 U.S.C. §§ 9606(a), 9607(a).

7.      MDEQ is a department within the Executive Branch of the State of Montana, with its principal offices located in Helena, Montana.  MDEQ is the agency charged with the administration and implementation of CECRA.  Mont. Code Ann. §75-10-711.

8.      Defendant is a Delaware corporation doing business in the State of Montana and is the successor to the Columbia Falls Aluminum Company, which owned and operated aluminum reduction facilities that were a source of hazardous substances that contaminated the Site. Defendant is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21) and Section 701(16) of CECRA, Mont. Code Ann. § 75-10-701(16).

9.      Defendant is a person, or successor to a person, who owns a facility or at the time of disposal of a hazardous substance, owned and/or operated a facility at which hazardous substances were disposed and from which there were releases or threatened releases of hazardous substances, which caused the incurrence of response costs within the meaning of CERCLA Sections 107(a)(1)-(2), 42 U.S.C. § 9607(a)(1)(2), and CECRA Sections 715(1)(a)-(b), Mont. Code Ann. § 75-10-715(1)(a)-(b).

4

## GENERAL ALLEGATIONS

### A. The Site

10.    The Site is located approximately two miles northeast of Columbia Falls, Montana. The Site consists of approximately 1,340 acres, bounded by Cedar Creek Reservoir to the north, Teakettle Mountain to the east, the Flathead River to the south, and Cedar Creek to the west.

11.    The Site is the location of a former aluminum reduction plant. Site operations began in 1955. The facility began with two "potlines," which constitute interconnected rows of reduction pots used in aluminum smelting.

12.    By the 1960s, the plant expanded to ten potlines. From 1985 to 2016, Defendant – the current owner, and its predecessor, Columbia Falls Aluminum Company, operated the facility. Primary products and wastes from activities at the Site included spent potliner material, which contained fluoride, sodium, aluminum, and cyanide.

13.    The aluminum production process also produced air emissions, including particulate fluoride. Wet scrubbers controlled air pollution from the smelting process until the 1990s. Wet scrubber sludge contained calcium flouride, calcium oxide, magnesium oxide, sodium oxide, and iron oxide.

14.    Until the 1990s, the spent potliner, scrubber sludge, and other solid wastes were disposed in on-Site landfills. Wastewater was historically

discharged indirectly into groundwater via state-issued discharge permits. The permits were effective until the plant closed permanently in 2009.

15.    The Site includes seven closed landfills, one open landfill, leachate ponds, percolation ponds, buildings and operational areas, and surface water features.

16.    The Site is a "facility," within the meaning of CERCLA Sections 101(9) and 107(a), 42 U.S.C. §§ 9601(9) and 9607(a), and CECRA Section 701(4), Mont. Code Ann. §75-10-701(4).

17.    At times relevant to this action, there have been "releases" and "threatened releases" of "hazardous substances" from the Site property into the environment, within the meaning of CERCLA Sections 101(14), 101(22), and 107(a), 42 U.S.C. §§ 9601(14), 9601(22) and 9607(a), and within the meaning of "hazardous or deleterious substance" and "release" found in CECRA at Sections 701(8) and 701(19), Mont. Code Ann. § 75-10-701(8) and (19).

18.    The United States has incurred "response costs" relating to the Site within the meaning of CERCLA Section 101(25), 42 U.S.C. § 9601(25), responding to releases and threatened releases of hazardous substances from the Site. The Unites States will continue to incur response costs in connection with the Site.

19.     The State has incurred and will continue to incur response costs, within the meaning of CERCLA Section 101(25), 42 U.S.C. § 9601(25), and remedial action costs within the meaning of CECRA Section 701(23), Mont. Code Ann. § 75-10-701(23) to respond to these releases or threatened releases. These costs include, but are not limited to, costs incurred and to be incurred for removal and remedial actions, for planning, legal, or other activities necessary or appropriate to plan, direct, and support response actions, for recovery of the costs of response actions, administration, investigation, and for legal or enforcement purposes.

20.     The response costs were incurred by the United States and the State in a manner not inconsistent with the National Contingency Plan, which was promulgated under CERCLA Section 105(a), 42 U.S.C. § 9605(a), and codified at 40 C.F.R. Part 300.

**B. Response Activities and Remedy Selection**

21.     Due to the releases of hazardous substances into the environment from aluminum reduction operations at the Site, EPA placed the Site on the National Priorities List on September 9, 2016. The Site is also listed on the Montana CECRA Priority List.

22.     On November 30, 2015, EPA and Defendant executed an Administrative Settlement Agreement and Order on Consent requiring

Defendant to conduct a Remedial Investigation and Feasibility Study in response to a release or substantial threat of release of hazardous substances at or from the Site.

23.     The Remedial Investigation focused on soils, river sediments, and ground and surface water to determine the nature and extent of contamination at the Site. As a result of the Feasibility Study, EPA determined that additional response actions were necessary to protect human health and the environment.

24.     In July 2020, Defendant entered into an Administrative Settlement Agreement and Order on Consent for a removal action with EPA to remove sediments from the South Percolation Ponds and return the flow of the Flathead River to its northern channel. The removal action prevented the potential for future erosion of the ponds and eliminated the risk for impacted sediment to reach the river. Defendant completed the removal action in May 2021.

25.     Defendant finalized the Feasibility Study in 2021. The Feasibility Study considered twenty-two remedial action alternatives based on the information gathered in the Remedial Investigation.

26.     The Feasibility Study divided the Site into the following six Decision Units to address specific media and Site areas:

  a.  Landfills Decision Unit 1

  b.  Landfills Decision Unit 2

8

   c.  Soil Decision Unit

   d.  North Percolation Pond Decision Unit

   e.  River Area Decision Unit

   f.  Groundwater Decision Unit

27. As a result of the Remedial Investigation and Feasibility Study, EPA determined that additional response actions were necessary to protect human health and the environment. EPA proposed a preferred remedial action alternative in a June 2023 Proposed Plan. EPA released the Proposed Plan for a public comment period that ran from June 1 to August 31, 2023. EPA's selected remedy and summary responding to public comments in accordance with Section 117(b) of CERCLA, 42 U.S.C. § 9617(b), is embodied in the Record of Decision executed on January 10, 2025, on which the MDEQ, on behalf of the State, has given its concurrence. The Record of Decision includes an attached Responsiveness Summary in which EPA responded to public comments received during the public comment period.

28. The selected remedy applies a strategy that emphasizes sitewide consolidation and encapsulation of contaminant sources to eliminate exposure pathways, reduces the transfer of contaminants of concern to groundwater, and prevents contaminant migration to the Flathead River.

## FIRST CLAIM FOR RELIEF
(Recovery of Response and Remedial Action Costs)

29.    The foregoing Paragraphs are re-alleged and incorporated by reference.

30.    Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), provides in part that:

(1) the owner and operator of a vessel or a facility, [or]
(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which hazardous substances were disposed of, [and]
(4) . . . from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for --

    (A)  all costs of removal or remedial action incurred by the United States Government or a State . . . not inconsistent with the national contingency plan[.]

31.    Section 715 of CECRA, Mont. Code Ann. § 75-10-715(1)(a) and (b) and (2)(a), similarly allows the State to recover "all remedial action costs incurred by the State," from liable parties.

32.    Defendant is within the class of persons described in Section 107(a)(1) and (a)(2) of CERCLA, 42 U.S.C. § 9607(a)(1) and (a)(2), and Sections 715(1)(a) and (1)(b) of CECRA, Mont. Code Ann. § 75-10-715(1)(a) and (1)(b), because Defendant owns and/or owned and operated at the time of

10

disposal a facility from which there was a release or threatened release of a hazardous substance.

33.     Defendant is liable to the United States and State for costs of response and remedial actions taken or that will be taken at the Site, including, *inter alia*, enforcement costs and interest authorized under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

34.     Defendant is liable to the State for costs of response and remedial actions taken or that will be taken at the Site under Sections 715 and 722 of CECRA, Mont. Code Ann. §§ 75-10-715(1)(a) and (b) and (2)(a), and 722(2) and (5).

## SECOND CLAIM FOR RELIEF
(Injunctive Relief—Performance of Response Actions)

35.     The foregoing Paragraphs are re-alleged and incorporated by reference.

36.     Section 106(a) of CERCLA, 42 U.S.C. § 9606(a), provides in pertinent part:

> In addition to any other action taken by a State or local government, when the President determines that there may be an imminent and substantial endangerment to the public health or welfare or the environment because of an actual or threatened release of a hazardous substance from a facility, he may require the Attorney General of the United States to secure such relief as may be necessary to abate such danger or threat, and the district court of the United States in the district

11

in which the threat occurs shall have jurisdiction to grant such relief as the public interest and the equities of the case may require.

37.   By Executive Order 12850 dated January 23, 1987, the President's functions under Section 106(a) of CERCLA, 42 U.S.C. § 9606(a), have been delegated to the Administrator of EPA.

38.   Section 711(8) of CECRA, Mont. Code Ann. § 75-10-711(8), authorizes the State to bring an action in the district court in the county where a release occurred as necessary to "abate any imminent and substantial endangerment to the public health, safety, or welfare or to the environment resulting from the release or threatened release" of hazardous or deleterious substances.

39.   EPA and MDEQ have determined that there is or may be an imminent and substantial endangerment to the public health or welfare or the environment because of actual and threatened releases of hazardous substances into the environment at and from the Site.

40.   EPA and MDEQ have determined that the remedy selected in the Record of Decision is necessary to abate the danger or threat at or from the Site.

41.   Under Section 106(a) of CERCLA, 42 U.S.C. § 9606(a) and CECRA Section 711(8), Mont. Code Ann. § 75-10-711(8), Defendant is liable for injunctive relief to undertake the remedial action identified in the Record of

Decision, which action EPA and MDEQ have determined to be necessary to abate the danger or threat at or from the Site.

## THIRD CLAIM FOR RELIEF
(Declaratory Judgment)

42. The foregoing Paragraphs are re-alleged and incorporated by reference.

43. Section 113(g)(2)(B) of CERCLA, 42, U.S.C. § 9613(g)(2)(B) provides, in part:

> In any such action . . . [for recovery of the costs referred to in section 107 of CERCLA], the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages.

44. Section 722(5) of CECRA, Mont. Code Ann. §75-10-722(5), provides, in part:

> An action to recover remedial action costs and interest may be brought under this section at any time after any remedial action costs and interest have been incurred, and the court may enter a declaratory judgment on liability for remedial action costs and interest that is binding on any subsequent action or actions to recover further remedial action costs and interest.

45. An actual, justiciable, and legal controversy now exists between MDEQ and Defendant. Accordingly, MDEQ seeks a judicial declaration of its

rights and legal relations with respect to Defendants pursuant to Mont. Code Ann. § 75-10-722(5) and the Uniform Declaratory Judgments Act ("UDJA") at Mont. Code Ann. §§ 27-8-101 through 27-8-313. MDEQ requests an award of costs of this action, pursuant to Mont. Code Ann. § 27-8-311.  MDEQ is entitled to recover costs of this action, including attorneys' fees as remedial action costs, against Defendants.

46.     Because response work is ongoing, the United States and State will continue to incur response costs at or in connection with the Site in the future.

47.     Defendant is subject to a declaratory judgment under Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), and Section 722(5) of CECRA § 75-10-722(5), and Section 311 of UDJA, Mont. Code Ann. § 27-8-311, on liability for response costs that will be binding on any subsequent actions to recover further response costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs United States of America and the State respectfully request that the Court:

A.     Order Defendants to perform the injunctive relief necessary to remedy conditions in connection with the release or threatened release of hazardous substances at the Site, including the remedy set forth in the Record of Decision;

B.      Enter judgment in favor of the United States and against Defendant for response costs incurred by the United States, including prejudgment interest, in connection with the above-described response actions relating to the Site, and order Defendant to pay such costs and interest;

C.      Enter judgment in favor of the State and against Defendant for response and remedial action costs incurred by the State, including prejudgment interest, in connection with the above-described response and remedial actions relating to the Site, and order Defendant to pay such costs and interest;

D.      Enter a declaratory judgment of liability against Defendant under Section 113(g)(2) of CERCLA, 42 U.S.S. 9613(g)(2), and Section 722(5) of CECRA, Mont. Code Ann. § 75-10-722(5), and Section 311 of UDJA, Mont. Code Ann. § 27-8-311, that will be binding on any subsequent action or actions to recover further response costs incurred by the United States or the State in connection with the Site;

E.      Award the costs of this action to the United States and the State; and

F.      Grant such other and further relief as the Court deems just and proper.

15

Respectfully submitted,

**FOR THE UNITED STATES OF AMERICA**

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
U.S. Department of Justice
Environment and Natural Resources Division

*/s/* *Jonah P. Brown*
JONAH P. BROWN
Trial Attorney, MT Bar #50670720
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section
P.O. Box 7611
Washington, D.C. 20044-7611
(202) 353-5902
Email: Jonah.Brown@usdoj.gov


MARK STEGER SMITH
Acting United States Attorney
District of Montana

*/s/* *Randy J. Tanner*
RANDY TANNER
Chief, Civil Division
District of Montana
Email: Randy.Tanner@usdoj.gov

16

**FOR THE STATE OF MONTANA**

/s/ *Jonathan Morgan*

Jonathan Morgan
Legal Counsel
State of Montana
Department of Environmental Quality
PO Box 200901
Helena, MT 59620-0901
(406) 444-6589
Email: JMorgan3@mt.gov