**UNITED STATES DISTRICT COURT**
**DISTRICT OF MONTANA**

UNITED STATES OF AMERICA and
STATE OF MONTANA,

Plaintiffs,

v.

COLUMBIA FALLS ALUMINUM
COMPANY, LLC,

Defendant.

Civil Action No. 9:26-cv-00099-KLD

# CONSENT DECREE

## TABLE OF CONTENTS


| | | |
|---|---|---|
| I. | BACKGROUND | 3 |
| II. | JURISDICTION AND VENUE | 4 |
| III. | PARTIES BOUND | 4 |
| IV. | DEFINITIONS | 5 |
| V. | OBJECTIVES | 9 |
| VI. | PERFORMANCE OF THE WORK | 9 |
| VII. | PROPERTY REQUIREMENTS | 11 |
| VIII. | FINANCIAL ASSURANCE | 13 |
| IX. | INDEMNIFICATION AND INSURANCE | 17 |
| X. | PAYMENTS FOR RESPONSE COSTS | 18 |
| XI. | FORCE MAJEURE | 20 |
| XII. | DISPUTE RESOLUTION | 21 |
| XIII. | STIPULATED PENALTIES | 23 |
| XIV. | COVENANTS BY PLAINTIFFS | 25 |
| XV. | COVENANTS BY SETTLING DEFENDANT | 27 |
| XVI. | EFFECT OF SETTLEMENT; CONTRIBUTION | 28 |
| XVII. | RECORDS | 28 |
| XVIII. | NOTICES AND SUBMISSIONS | 31 |
| XIX. | APPENDIXES | 31 |
| XX. | MODIFICATIONS TO DECREE | 32 |
| XXI. | SIGNATORIES | 32 |
| XXII. | PRE-ENTRY PROVISIONS | 32 |
| XXIII. | INTEGRATION | 32 |
| XXIV. | FINAL JUDGMENT | 32 |

## I. BACKGROUND

1. The United States of America ("United States"), on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), filed a complaint in this matter under sections 106 and 107 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"). The State of Montana ("State") has joined the complaint under section 107 of CERCLA, and has also alleged that defendant is liable to the State under the Montana Comprehensive Environmental Cleanup and Responsibility Act ("CECRA"), Section 75-10-701, MCA, *et seq.*

2. The United States and State in their complaint seek, *inter alia*: (1) reimbursement of costs incurred by the EPA, the Department of Justice ("DOJ"), and the State for response actions at the Anaconda Aluminum Co. Columbia Falls Reduction Plant Superfund Site (also known as the Columbia Falls Aluminum Company Superfund Site) near Columbia Falls, Montana ("Site"), together with accrued interest; and (2) performance by the defendant of a response action at the Site consistent with the NCP, 40 C.F.R. part 300.

3. In accordance with section 122(j)(1) of CERCLA, the EPA notified the United States Department of Interior, the United States Department of Energy, and the United States Department of Agriculture on April 29, 2025, of negotiations with potentially responsible parties ("PRPs") regarding the release of hazardous substances that may have resulted in injury to the natural resources under federal trusteeship and encouraged the trustees to participate in the negotiation of this Decree. The EPA also notified the Confederated Salish and Kootenai Tribes and the Montana Natural Resources Damage Program on April 29, 2025, of negotiations with PRPs regarding the release of hazardous substances that may have resulted in injury to the natural resources under state and tribal trusteeship and encouraged the trustees to participate in the negotiation of this Decree.

4. The defendant that has entered into this Decree ("Settling Defendant") does not admit any liability to Plaintiffs arising out of the transactions or occurrences alleged in the complaint, nor does it acknowledge that the release or threatened release of hazardous substances at or from the Site constitutes an imminent and substantial endangerment to the public health or welfare or the environment.

5. In accordance with section 105 of CERCLA, the EPA listed the Site on the National Priorities List ("NPL"), set forth at 40 C.F.R. part 300, Appendix B, by publication in the Federal Register on September 9, 2016, 81 Fed. Reg. 62397. The Site is also listed on the Montana CECRA Priority List.

6. In response to a release or a substantial threat of a release of hazardous substances at or from the Site, the Settling Defendant, under EPA oversight, completed a Remedial Investigation for the Site on February 21, 2020, and a Feasibility Study for the Site on June 16, 2021, in accordance with 40 C.F.R. § 300.430.

7. In accordance with section 117 of CERCLA and 40 C.F.R § 300.430(f), the EPA published notice of the proposed plan for remedial action on June 1, 2023, in major local newspapers of general circulation. The EPA provided an opportunity for written and oral comments from the public on the proposed plan for remedial action. A copy of the transcript of the public meeting and comments received are available to the public as part of the administrative record upon which the Regional Administrator, EPA Region 8, based the selection of the response action.

8. The EPA selected a remedial action to be implemented at the Site, which is embodied in a final Record of Decision ("Record of Decision"), executed on January 10, 2025, on which the State has given its concurrence. The Record of Decision includes a summary of responses to the public comments. Notice of the final plan was published in accordance with section 117(b) of CERCLA.

9. Based on the information currently available, both the EPA and the State have determined that the Work will be properly and promptly conducted by Settling Defendant if conducted in accordance with this Decree.

10. The Parties recognize, and the Court by entering this Decree finds, that this Decree has been negotiated by the Parties in good faith, that implementation of this Decree will expedite the cleanup of the Site and will avoid prolonged and complicated litigation between the Parties, and that this Decree is fair, reasonable, in the public interest, and consistent with CERCLA.

NOW, THEREFORE, it is hereby **ORDERED** and **DECREED** as follows:

## II. JURISDICTION AND VENUE

11. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331, 1367 and 1345, and sections 106, and 113(b) of CERCLA, and personal jurisdiction over the Parties. Venue lies in this District under section 113(b) of CERCLA and 28 U.S.C. §§ 1391(b), and 1395(a), because the Site is located in this judicial district. This Court retains jurisdiction over the subject matter of this action and over the Parties for the purpose of resolving disputes arising under this Decree, entering orders modifying this Decree, or effectuating or enforcing compliance with this Decree. Settling Defendant may not challenge the terms of this Decree or this Court's jurisdiction to enter and enforce this Decree.

## III. PARTIES BOUND

12. This Decree is binding upon the United States and the State and upon Settling Defendant and its successors. Unless the United States and State otherwise consents in a modification implemented under ¶ 77, Settling Defendant's obligations under this Decree: (a) are not altered by any change in ownership or corporate or other legal status, including any transfer of assets, or by any Transfer of the Site or any portion thereof; and (b) cannot be assigned.

13. In any action to enforce this Decree, Settling Defendant may not raise as a defense the failure of any of its officers, directors, employees, agents, contractors, subcontractors, or any person representing Settling Defendant to take any action necessary to comply with this Decree. Settling Defendant shall provide notice of this Decree to each person representing Settling Defendant with respect to the Site or the Work. Settling Defendant shall provide notice of this Decree to each contractor performing any Work and shall ensure that notice of the Decree is provided to each subcontractor performing any Work.

## IV. DEFINITIONS

14. Terms not otherwise defined in this Settlement have the meanings assigned in CERCLA and the regulations promulgated under CERCLA. Whenever the terms set forth below are used in this Decree, the following definitions apply:

"Agencies" means the EPA and the DEQ collectively.

"CECRA" means the Montana Comprehensive Environmental Cleanup and Responsibility Act, as amended, §§ 75-10-701 et seq., MCA.

"CERCLA" means the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601-9675.

"Columbia Falls Aluminum Plant Special Account" means the special account, within the Fund, established for the Site by the EPA pursuant to section 122(b)(3) of CERCLA, 42 U.S.C. § 9622(b)(3), and the RI/FS ASAOC.

"Day" or "day" means a calendar day. In computing any period under this Decree, the day of the event that triggers the period is not counted and, where the last day is not a working day, the period runs until the close of business of the next working day. "Working day" means any day other than a Saturday, Sunday, or federal or State holiday.

"Decree" means this consent decree, all appendixes attached hereto (listed in Section XIX), and all deliverables incorporated into the Decree under the SOWs. If there is a conflict between a provision in Sections I through XXIV and a provision in any appendix or deliverable, the provision in Sections I through XXIV controls.

"DEQ" means the Montana Department of Environmental Quality.

"DOJ" means the United States Department of Justice.

"Effective Date" means the date upon which the Court's approval of this Decree is recorded on its docket.

"EPA" means the United States Environmental Protection Agency.

"Fund" means the Hazardous Substance Superfund established under section 9507 of the Internal Revenue Code, 26 I.R.C. § 9507.

"Future Response Costs" means all costs (including direct, indirect, payroll, contractor, travel, and laboratory costs) that the United States: (a) pays between the effective date of the UAO and the Effective Date; and (b) pays after the Effective Date in implementing, overseeing, or enforcing this Decree, including: (i) in developing, reviewing and approving deliverables generated under this Decree; (ii) in overseeing Settling Defendant's performance of the Work; (iii) in assisting or taking action to obtain access or use restrictions under ¶ 21.d; (iv) in securing, implementing, monitoring, maintaining, or enforcing Institutional Controls, including any compensation paid; (v) in taking action under ¶ 31 (Access to Financial Assurance); (vi) in taking response action described in ¶ 61 because of Settling Defendant's failure to take emergency action under the SOWs; (vii) in implementing a Work Takeover under ¶ 20; (viii) in implementing community involvement activities provided under section 117(e) of CERCLA; (ix) in enforcing this Decree, including all costs paid under Section XII (Dispute Resolution) and all litigation costs; and (x) in conducting periodic reviews in accordance with section 121(c) of CERCLA. Future Response Costs also includes all Interest accrued after the effective date of the UAO on EPA's unreimbursed costs (including Past Response Costs) under section 107(a) of CERCLA.

"Including" or "including" means "including but not limited to."

"Institutional Controls" means Proprietary Controls (*i.e.*, easements or covenants running with the land that (i) limit land, water, or other resource use, provide access rights, or both and (ii) are created under common law or statutory law by an instrument that is recorded, or for which notice is recorded, in the appropriate land records office) and state or local laws, regulations, ordinances, zoning restrictions, or other governmental controls or notices that: (a) limit land, water, or other resource use to minimize the potential for human exposure to Waste Material at or in connection with the Site; (b) limit land, water, or other resource use to implement, ensure noninterference with, or ensure the protectiveness of the Remedial Action; (c) provide information intended to modify or guide human behavior at or in connection with the Site; or (d) any combination thereof.

"Interest" means interest at the rate specified for interest on investments of the Fund, as provided under section 107(a) of CERCLA, compounded annually on October 1 of each year. The applicable rate of interest will be the rate in effect at the time the interest accrues. The rate of interest is subject to change on October 1 of each year. As of the date of lodging of this Decree, rates are available online at https://www.epa.gov/superfund/superfund-interest-rates. "Interest" on State claims means interest specified in § 75-10-722, MCA, as amended.

"NCP" means the National Oil and Hazardous Substances Pollution Contingency Plan, also called the National Contingency Plan, promulgated under section 105 of CERCLA, codified at 40 C.F.R. part 300, and any amendments thereto.

"Paragraph" or "¶" means a portion of this Decree identified by an Arabic numeral or an upper- or lower-case letter.

"Parties" means the United States, the State, and Settling Defendant.

"Past Response Costs" means all costs (including direct, indirect, payroll, contractor, travel, and laboratory costs) that the United States and State paid in connection with the Site through the effective date of the UAO, plus all interest on such costs accrued under section 107(a) of CERCLA through such date.

"Performance Standards" means the cleanup levels and other measures of achievement of the remedial action objectives, as set forth in the Record of Decision.

"Plaintiffs" means the United States and the State.

"RCRA" means the Solid Waste Disposal Act, 42 U.S.C. §§ 6901-6992k, (also known as the Resource Conservation and Recovery Act).

"RD/RA SOW" means the Statement of Work attached as Appendix B, which describes the activities Settling Defendant must perform to implement and maintain the effectiveness of the Remedial Action.

"Record of Decision" means the EPA decision document that memorializes the selection of the remedial action relating to the Site signed on January 10, 2025, by the Regional Administrator, EPA Region 8, and all attachments thereto. The Record of Decision is attached as Appendix A.

"Remedial Action" means the remedial action selected in the Record of Decision.

"Remedial Design" means those activities to be undertaken by Settling Defendant to develop plans and specifications for implementing the Remedial Action as set forth in the SOWs.

"Removal ASAOC" means the Administrative Settlement Agreement and Order on Consent for Removal Actions, Docket No. CERCLA 08-2020-0002, entered into by the EPA and Settling Defendant on July 21, 2020.

"RI/FS ASAOC" means the Administrative Settlement Agreement and Order on Consent for Remedial Investigation/Feasibility Study, Docket No. CERCLA 08-2016-0002, entered into by the EPA and Settling Defendant on November 30, 2015.

"Scope of the Remedy" means the scope of the remedy set forth in the SOWs.

"Section" means a portion of this Decree identified by a Roman numeral.

"Settling Defendant" means Columbia Falls Aluminum Company, LLC, its divisions and subsidiaries, and any predecessors or successors in interest.

"Site" means the Anaconda Aluminum Co. Columbia Falls Reduction Plant Superfund Site, also known as the Columbia Falls Aluminum Company Superfund Site, comprising approximately 1,340 acres, bounded by Cedar Creek Reservoir to the north, Teakettle Mountain to the east, Flathead River to the south, Cedar Creek to the west, and located approximately two miles northeast the city of Columbia Falls, Flathead County, Montana, and depicted generally on the map attached as Appendix C.

"SOWs" collectively refers to statements of work created pursuant to or incorporated into this Decree, including the RD/RA SOW and the UAO SOW. If there is a conflict between a provision in the RD/RA SOW and the UAO SOW, the provision in the RD/RA SOW controls.

"State" means the State of Montana.

"State Future Response Costs" means all costs (including direct, indirect, payroll, contractor, travel and laboratory costs), that the State pays after the Effective Date: (i) in assisting or taking action to obtain access or use restrictions under ¶ 21.d (Property Requirements); (ii) in securing, implementing, monitoring, maintaining, or enforcing Institutional Controls, including compensation paid; (iii) in taking response action described in ¶ 61 because of Settling Defendant's failure to take emergency action under the SOWs; and (iv) enforcing this Consent Decree, including all costs paid under Section XII (Dispute Resolution) and all litigation costs. Such costs are State Future Response Costs if they are not reimbursed by the EPA via cooperative agreement expenditures.

"Transfer" means to sell, assign, convey, lease, mortgage, or grant a security interest in, or where used as a noun, a sale, assignment, conveyance, or other disposition of any interest by operation of law or otherwise.

"UAO" means the Unilateral Administrative Order for Remedial Design and Remedial Action, Docket No. CERCLA-08-2025-0005, issued by the EPA to Settling Defendant on July 31, 2025.

"UAO SOW" means the Statement of Work attached to this Decree as Appendix D, which describes the activities Settling Defendant must perform to implement and maintain the effectiveness of the Remedial Action. The UAO SOW was originally attached as an appendix to the UAO but is hereby incorporated into this Decree.

"United States" means the United States of America and each department, agency, and instrumentality of the United States, including the EPA.

"Waste Material" means (a) any "hazardous substance" under section 101(14) of CERCLA; (b) any pollutant or contaminant under section 101(33) of CERCLA; (c) any "solid waste" under section 1004(27) of RCRA; and (d) any "hazardous or deleterious substance" under section 75-10-701(8), Montana Code Annotated.

"Work" means all obligations of Settling Defendant under Sections VI (Performance of the Work) through IX (Indemnification and Insurance).

"Work Takeover" means EPA's assumption of the performance of any of the Work in accordance with ¶ 20.

## V. OBJECTIVES

15. **Objectives of the Parties.**

a. The objectives of the Parties in entering into this Decree are to protect public health, welfare, and the environment through the design, implementation, and maintenance of a response action at the Site by Settling Defendant, to pay response costs of Plaintiffs, and to resolve and settle the claims of Plaintiffs against Settling Defendant as provided in this Decree. Reference to EPA's exercise of its approval authority in this Decree will be exercised after consultation with the DEQ.

b. This Decree supersedes all prior enforcement documents relating to the Site with respect to Settling Defendant, including the RI/FS ASAOC, the Removal ASAOC, and the UAO. The RI/FS ASAOC, the Removal ASAOC, and the UAO are no longer in effect. The UAO SOW is hereby incorporated into this Decree.

## VI. PERFORMANCE OF THE WORK

16. Settling Defendant shall finance, develop, implement, operate, maintain, and monitor the effectiveness of the Remedial Action all in accordance with the SOWs, any modified statement of work and all EPA-approved, conditionally approved, or modified deliverables as required by the SOWs or modified statement of work.

17. Nothing in this Decree and no EPA approval of any deliverable required under this Decree constitutes a warranty or representation by the EPA or the State that completion of the Work will achieve the Performance Standards.

18. **Modifications to the Remedial Action and Further Response Actions**

a. Nothing in this Decree limits EPA's authority to modify the Remedial Action or to select further response actions for the Site in accordance with the requirements of CERCLA and the NCP. Nothing in this Decree limits Settling Defendant's rights, under sections 113(k)(2) or 117 of CERCLA, to comment on any modified or further response actions proposed by the EPA.

b. If the EPA modifies the Remedial Action in order to achieve or maintain the Performance Standards, or both, or to carry out and maintain the effectiveness of the Remedial Action, and such modification is consistent with the Scope of the Remedy, then upon receipt of notice from EPA and subject to its right to initiate dispute resolution under Section XII within 30 days, Settling Defendant shall implement the modification as provided in ¶ 18.d.

c. If the EPA selects a further response action for the Site because a reopener condition in ¶ 59 is satisfied, then, subject to ¶ 77, Settling Defendant shall implement the further response action as provided in ¶ 18.d.

d. Settling Defendant shall implement the modification or further response action, subject to its right to initiate dispute resolution. Settling Defendant shall modify the RD/RA SOW or UAO SOW, as appropriate, or related work plans, or both in accordance with the Remedial Action modification or further response action or final resolution of the dispute, whichever applies. The Remedial Action modification or further response action, the approved modified RD/RA SOW or UAO SOW, and any related work plans will be deemed to be incorporated into and enforceable under this Decree.

e. Notwithstanding any other provision in ¶ 18, any modification to implement an amendment to the Record of Decision that "fundamentally alters the basic features" of the Remedial Action within the meaning of 40 C.F.R. § 300.435(c)(2)(ii) shall be considered a material modification under, and may only be implemented in accordance with, ¶ 77.

19. **Compliance with Applicable Law**. Nothing in this Decree affects Settling Defendant's obligations to comply with all applicable federal and state laws and regulations. Settling Defendant must also comply with all applicable or relevant and appropriate requirements of all federal and state environmental laws as set forth in the Record of Decision and the SOWs. The activities conducted in accordance with this Decree, if approved by the EPA, will be deemed to be consistent with the NCP as provided under section 300.700(c)(3)(ii).

20. **Work Takeover**

a. If the EPA determines that Settling Defendant (i) has ceased to perform any of the Work required under this Section; (ii) is seriously or repeatedly deficient or late in performing the Work required under this Section; or (iii) is performing the Work required under this Section in a manner that may cause an endangerment to public health or welfare or the environment, the EPA may issue a notice of Work Takeover to Settling Defendant, including a description of the grounds for the notice and a period of time ("Remedy Period") within which Settling Defendant must remedy the circumstances giving rise to the notice. The Remedy Period will be 20 days, unless the EPA determines in its unreviewable discretion that there may be an endangerment, in which case the Remedy Period will be ten days.

b. If, by the end of the Remedy Period, Settling Defendant does not remedy to EPA's satisfaction the circumstances giving rise to the notice of Work Takeover, the EPA may notify Settling Defendant and, as it deems necessary, commence a Work Takeover.

c. The EPA may conduct the Work Takeover during the pendency of any dispute under Section XII but shall terminate the Work Takeover if: (i) Settling Defendant remedies, to EPA's satisfaction, the circumstances giving rise to the notice of Work Takeover; or (ii) upon the issuance of a final determination under Section XII (Dispute Resolution) that the EPA is required to terminate the Work Takeover.

## VII. PROPERTY REQUIREMENTS

21. **Agreements Regarding Access and Noninterference**

a. Settling Defendant shall use best efforts to secure from the owner(s) of property within the Site, other than Settling Defendant, an agreement, enforceable by Settling Defendant and by Plaintiffs, requiring such owner to provide Plaintiffs and Settling Defendant, and their respective representatives, contractors, and subcontractors with access at all reasonable times to such owner's property to conduct any activity regarding the Decree, including the following:

(1) implementing the Work and overseeing compliance with the Decree;

(2) conducting investigations of contamination at or near the Site;

(3) assessing the need for, planning, or implementing additional response actions at or near the Site;

(4) determining whether the Site is being used in a manner that is prohibited or restricted, or that may need to be prohibited or restricted under the Decree; and

(5) implementing, monitoring, maintaining, reporting on, and enforcing any land, water, or other resource use restrictions and Institutional Controls.

b. Further, each agreement required under ¶ 21.a must commit the owner to refrain from using its property in any manner that the EPA determines will pose an unacceptable risk to public health or welfare or the environment as a result of exposure to Waste Material, or will interfere with or adversely affect the implementation, integrity, or protectiveness of the Remedial Action, including the following:

(1) engaging in activities that could interfere with the Remedial Action;

(2) using contaminated groundwater;

(3) engaging in activities that could result in human exposure to contaminants in soils and groundwater;

(4) constructing new structures that may interfere with the Remedial Action; and

(5) constructing new structures that may cause an increased risk of inhalation of contaminants.

c. As used in this Section, "best efforts" means the efforts that a reasonable person in the position of Settling Defendant would use to achieve the goal in a timely manner,

including the cost of employing professional assistance and the payment of reasonable sums of money to secure access and/or use restriction agreements.

d. Settling Defendant shall provide to the Agencies a copy of each agreement required under this Paragraph. If Settling Defendant cannot accomplish what is required through best efforts in a timely manner, it shall notify the Agencies, and include a description of the steps taken to achieve the requirements. If the United States deems it appropriate, it may assist Settling Defendant, or take independent action, to obtain such access or use restrictions.

22. **Access and Noninterference by Settling Defendant**. Settling Defendant shall: (a) provide Plaintiffs and their representatives, contractors, and subcontractors with access at all reasonable times to portions of the Site that Settling Defendant owns to conduct any activity regarding the Decree, including those listed in ¶ 21.a; and (b) refrain from using the Site in any manner that the EPA determines will pose an unacceptable risk to public health or welfare or the environment because of exposure to Waste Material, or will interfere with or adversely affect the implementation, integrity, or protectiveness of the Remedial Action, including the restrictions listed in ¶ 21.b.

23. If the EPA determines in a decision document prepared in accordance with the NCP that Institutional Controls in the form of state or local laws, regulations, ordinances, zoning restrictions, or other governmental controls or notices are appropriate, Settling Defendant shall cooperate with the Agencies' efforts to secure and ensure compliance with such Institutional Controls.

24. **Notice to Successors-in-Title**

a. Settling Defendant who is the recorded owner shall, within 15 days after the Effective Date, submit for EPA approval a notice to be recorded regarding Settling Defendant's property at the Site in the appropriate land records. The notice must: (1) include a proper legal description of the property; (2) provide notice to all successors-in-title: (i) that the property is part of, or affected by, the Site; (ii) that the EPA has selected a remedy for the Site; and (iii) that potentially responsible parties have entered into the Decree requiring implementation of such remedy; and (3) identify the U.S. District Court in which the Decree was filed, the name and civil action number of this case, and the Effective Date of the Decree. Settling Defendant shall record the notice within ten days after EPA's approval of the notice and submit to the EPA, within ten days thereafter, a certified copy of the recorded notice.

b. Settling Defendant shall, prior to entering into a contract to Transfer any of its property that is part of the Site, or 60 days prior to a Transfer of such property, whichever is earlier:

(1) notify the proposed transferee that the EPA has selected a remedy regarding the Site, that potentially responsible parties have entered into the Decree requiring implementation of such remedy, and that the United States District Court has entered the Decree (identifying the name and

civil action number of this case and the date the Court entered the Decree); and

(2) notify the Agencies of the name and address of the proposed transferee and provide the Agencies with a copy of the notice that it provided to the proposed transferee.

25. Notwithstanding any provision of the Decree, the EPA and the State retain all of their access authorities and rights, as well as all of its rights to require land, water, or other resource use restrictions and Institutional Controls, including related enforcement authorities, under CERCLA, RCRA, CECRA and any other applicable statute or regulations.

## VIII. FINANCIAL ASSURANCE

26. To ensure completion of the Work required under Section VI, Settling Defendant shall secure financial assurance, initially in the amount of $57,634,528.00 ("Estimated Cost of the Work"), for the benefit of the EPA. The financial assurance must: (i) be one or more of the mechanisms listed below, in a form substantially identical to the relevant sample documents available from the EPA; and (ii) be satisfactory to the Agencies. As of the date of lodging of this Decree, the sample documents can be found under the "Financial Assurance - Settlements" category on the Cleanup Enforcement Model Language and Sample Documents Database at https://cfpub.epa.gov/compliance/models/. Settling Defendant may use multiple mechanisms if it is limited to surety bonds guaranteeing payment, letters of credit, trust funds, or some combination thereof. The following are acceptable mechanisms:

a. a surety bond guaranteeing payment, performance of the Work, or both, that is issued by a surety company among those listed as acceptable sureties on federal bonds as set forth in Circular 570 of the U.S. Department of the Treasury;

b. an irrevocable letter of credit, payable to the EPA or at the direction of the EPA, that is issued by an entity that has the authority to issue letters of credit and whose letter-of-credit operations are regulated and examined by a federal or state agency;

c. a trust fund established for the benefit of the EPA that is administered by a trustee that has the authority to act as a trustee and whose trust operations are regulated and examined by a federal or state agency;

d. a policy of insurance that provides the EPA with acceptable rights as a beneficiary thereof and that is issued by an insurance carrier that has the authority to issue insurance policies in the applicable jurisdiction(s) and whose insurance operations are regulated and examined by a federal or state agency; or

e. a guarantee to fund or perform the Work executed in favor of the EPA by a company: (1) that is a direct or indirect parent company of a Settling Defendant or has a "substantial business relationship" (as defined in 40 C.F.R. § 264.141(h)) with Settling

Defendant; and (2) demonstrates to the EPA's satisfaction that it meets the financial test criteria of ¶ 27.

27. Settling Defendant seeking to provide financial assurance by means of a demonstration or guarantee under ¶ 26.e must, within 30 days after the Effective Date:

a. demonstrate that:

(1) the Settling Defendant or guarantor has:

i. two of the following three ratios: a ratio of total liabilities to net worth less than 2.0; a ratio of the sum of net income plus depreciation, depletion, and amortization to total liabilities greater than 0.1; and a ratio of current assets to current liabilities greater than 1.5; and

ii. net working capital and tangible net worth each at least six times the sum of the Estimated Cost of the Work and the amounts, if any, of other federal, state, or tribal environmental obligations financially assured through the use of a financial test or guarantee; and

iii. tangible net worth of at least $10 million; and

iv. assets located in the United States amounting to at least 90 percent of total assets or at least six times the sum of the Estimated Cost of the Work and the amounts, if any, of other federal, state, or tribal environmental obligations financially assured through the use of a financial test or guarantee; or

(2) Settling Defendant or guarantor has:

i. a current rating for its senior unsecured debt of AAA, AA, A, or BBB as issued by Standard and Poor's or Aaa, Aa, A or Baa as issued by Moody's; and

ii. tangible net worth at least six times the sum of the Estimated Cost of the Work and the amounts, if any, of other federal, state, or tribal environmental obligations financially assured through the use of a financial test or guarantee; and

iii. tangible net worth of at least $10 million; and

iv. assets located in the United States amounting to at least 90 percent of total assets or at least six times the sum of the Estimated Cost of the Work and the amounts, if any, of other federal, state, or tribal

environmental obligations financially assured through the use of a financial test or guarantee; and

b. submit to the EPA for Settling Defendant or guarantor: (1) a copy of an independent certified public accountant's report of the entity's financial statements for the latest completed fiscal year, which must not express an adverse opinion or disclaimer of opinion; and (2) a letter from its chief financial officer and a report from an independent certified public accountant substantially identical to the sample letter and reports available from the EPA. As of the date of lodging of this Decree, a sample letter and report is available under the "Financial Assurance - Settlements" subject list category on the Cleanup Enforcement Model Language and Sample Documents Database at https://cfpub.epa.gov/compliance/models/.

28. Settling Defendant providing financial assurance by means of a guarantee under ¶ 26.e must also:

a. annually resubmit the documents described in ¶ 27.b within 90 days after the close of Settling Defendant's or guarantors fiscal year; and

b. notify the EPA within 30 days after Settling Defendant or guarantor determines that it no longer satisfies the relevant financial test criteria and requirements set forth in this Section; and

c. provide to the EPA, within 30 days of EPA's request, reports of the financial condition of the affected Settling Defendant or guarantor in addition to those specified in ¶ 27.b; the EPA may make such a request at any time based on a belief that Settling Defendant or guarantor may no longer meet the financial test requirements of this Section.

29. Settling Defendant has selected, and the EPA has found satisfactory, a surety bond that is issued by AXIS Insurance Company as an initial form of financial assurance. Within 30 days after the Effective Date, Settling Defendant shall secure all executed or otherwise finalized mechanisms or other documents consistent with the EPA-approved form of financial assurance and shall submit such mechanisms and documents to the Regional Financial Management Officer, to DOJ, to the EPA, and to the DEQ.

30. Settling Defendant shall diligently monitor the adequacy of the financial assurance. If Settling Defendant becomes aware of any information indicating that the financial assurance provided under this Section is inadequate or otherwise no longer satisfies the requirements of this Section, Settling Defendant shall notify the EPA of such information within seven days. If the EPA determines that the financial assurance provided under this Section is inadequate or otherwise no longer satisfies the requirements of this Section, the EPA will notify Settling Defendant of such determination. Settling Defendant shall, within 30 days after notifying the EPA or receiving notice from the EPA under this Paragraph, secure and submit to the EPA for approval a proposal for a revised or alternative financial assurance mechanism that satisfies the requirements of this Section. Within 30 days of the notice from the EPA under this Paragraph, Settling Defendant may invoke the Dispute Resolution provisions of Section XII to challenge the EPA's determination that the financial assurance is inadequate or otherwise no

longer satisfies the requirements of this Section. In the event that Settling Defendant invokes the Dispute Resolution provisions of Section XII to challenge the EPA's determination, the EPA shall extend this deadline for the duration of the dispute and until the dispute is resolved under Section XII. The EPA may also extend this deadline for such time as is reasonably necessary for Settling Defendant, in the exercise of due diligence, to secure and submit to the EPA a proposal for a revised or alternative financial assurance mechanism. Settling Defendant shall follow the procedures of ¶ 32 in seeking approval of, and submitting documentation for, the revised or alternative financial assurance mechanism. Settling Defendant's inability to secure financial assurance in accordance with this Section does not excuse performance of any other requirement of this Decree.

31. **Access to Financial Assurance**

a. If the EPA issues a notice of a Work Takeover under ¶ 20.b, then, in accordance with any applicable financial assurance mechanism, the EPA may require that any funds guaranteed be paid in accordance with ¶ 31.d.

b. If the EPA is notified that the issuer of a financial assurance mechanism intends to cancel the mechanism, and Settling Defendant fails to provide an alternative financial assurance mechanism in accordance with this Section at least 30 days prior to the cancellation date, the funds guaranteed under such mechanism must be paid prior to cancellation in accordance with ¶ 31.d.

c. If, upon issuance of a notice of a Work Takeover under ¶ 20, the EPA is unable for any reason to promptly secure the resources guaranteed under any applicable financial assurance mechanism, whether in cash or in kind, to continue and complete the Work, then the EPA is entitled to demand an amount, as determined by the EPA, sufficient to cover the cost of the remaining Work to be performed. Settling Defendant shall, within 14 days after such demand, pay the amount demanded as directed by the EPA.

d. Any amounts required to be paid under this Paragraph must be, as directed by the EPA: (i) paid to the EPA in order to facilitate the completion of the Work by the EPA or by another person; or (ii) deposited into an interest-bearing account, established at a duly chartered bank or trust company that is insured by the Federal Deposit Insurance Corporation ("FDIC"), in order to facilitate the completion of the Work by another person. If payment is made to the EPA, the EPA may deposit the payment into the Fund or into the Columbia Falls Aluminum Plant Special Account to be retained and used to conduct or finance response actions at or in connection with the Site, or to be transferred by the EPA to the Fund.

32. **Modification of Amount, Form, or Terms of Financial Assurance**. Beginning after the first anniversary of the Effective Date, and no more than once per calendar year, Settling Defendant may submit a request to change the form, terms, or amount of the financial assurance mechanism. Any such request must be submitted to the EPA in accordance with ¶ 29, and must include an estimate of the cost of the remaining Work, an explanation of the bases for the cost calculation, and a description of the proposed changes, if any, to the form or terms of the financial assurance. The EPA will notify Settling Defendant of its decision regarding the request.

Settling Defendant may initiate dispute resolution under Section XII regarding EPA's decision within 30 days after receipt of the decision. Settling Defendant may modify the form, terms, or amount of the financial assurance mechanism only: (a) in accordance with EPA's approval; or (b) in accordance with any resolution of a dispute under Section XII. Settling Defendant shall submit to the EPA, within 30 days after receipt of EPA's approval or consistent with the terms of the resolution of the dispute, documentation of the change to the form, terms, or amount of the financial assurance instrument.

33. **Release, Cancellation, or Discontinuation of Financial Assurance**. Settling Defendant may release, cancel, or discontinue any financial assurance provided under this Section only: (a) if the EPA issues a Certification of Work Completion under ¶ 5.10 of the RD/RA SOW; (b) in accordance with EPA's approval of such release, cancellation, or discontinuation; or (c) if there is a dispute regarding the release, cancellation or discontinuance of any financial assurance, in accordance with the agreement, final administrative decision, or final judicial decision resolving such dispute under Section XII.

## IX. INDEMNIFICATION AND INSURANCE

34. **Indemnification**

a. Plaintiffs do not assume any liability by entering into this Decree or by virtue of any designation of Settling Defendant as EPA's and the State's authorized representatives under section 104(e)(1) of CERCLA. Settling Defendant shall indemnify and save and hold harmless Plaintiffs and their officials, agents, employees, contractors, subcontractors, and representatives for or from any claims or causes of action arising from, or on account of, negligent or other wrongful acts or omissions of Settling Defendant, its officers, directors, employees, agents, contractors, subcontractors, and any persons acting on Settling Defendant's behalf or under its control, in carrying out activities under this Decree, including any claims arising from any designation of Settling Defendant as EPA's and the State's authorized representative under section 104(e)(1) of CERCLA. Further, Settling Defendant agrees to pay Plaintiffs all costs it incurs including attorneys' fees and other expenses of litigation and settlement arising from, or on account of, claims made against Plaintiffs based on negligent or other wrongful acts or omissions of Settling Defendant, its officers, directors, employees, agents, contractors, subcontractors, and any persons acting on its behalf or under its control in carrying out activities under with this Decree. Plaintiffs may not be held out as parties to any contract entered into by or on behalf of Settling Defendant in carrying out activities under this Decree. Settling Defendant and any such contractor may not be considered an agent of Plaintiffs.

b. Each Plaintiff shall give Settling Defendant notice of any claim for which such Plaintiff plans to seek indemnification in accordance with this Paragraph and shall consult with Settling Defendant prior to settling such claim.

35. Settling Defendant covenants not to sue and shall not assert any claim or cause of action against Plaintiffs for damages or reimbursement or for set-off of any payments made or to be made to Plaintiffs, arising from or on account of any contract, agreement, or arrangement

between Settling Defendant and any person for performance of Work or other activities on or relating to the Site, including claims on account of construction delays. In addition, Settling Defendant shall indemnify and save and hold Plaintiffs harmless with respect to any claims for damages or reimbursement arising from or on account of any contract, agreement, or arrangement between Settling Defendant and any person for performance of work at or relating to the Site, including claims on account of construction delays.

36. **Insurance**. Settling Defendant shall secure, by no later than 15 days before commencing any on-site Work, the following insurance: (a) commercial general liability insurance with limits of liability of $1 million per occurrence; (b) automobile liability insurance with limits of liability of $1 million per accident; and (c) umbrella liability insurance with limits of liability of $5 million in excess of the required commercial general liability and automobile liability limits. The insurance policy must name Plaintiffs as an additional insureds with respect to all liability arising out of the activities performed by or on behalf of Settling Defendant under this Decree. Settling Defendant shall maintain this insurance until the first anniversary after issuance of EPA's Certification of Remedial Action Completion under ¶ 5.8 of the RD/RA SOW. In addition, for the duration of this Decree, Settling Defendant shall satisfy, or shall ensure that their contractors or subcontractors satisfy, all applicable laws and regulations regarding the provision of worker's compensation insurance for all persons performing the Work on behalf of Settling Defendant in furtherance of this Decree. Prior to commencement of the Work, Settling Defendant shall provide to the EPA certificates of such insurance and a copy of each insurance policy. Settling Defendant shall resubmit such certificates and copies of policies each year on the anniversary of the Effective Date. If Settling Defendant demonstrates by evidence satisfactory to the EPA that any contractor or subcontractor maintains insurance equivalent to that described above, or insurance covering the same risks but in a lesser amount, then, with respect to that contractor or subcontractor, Settling Defendant need provide only that portion of the insurance described above that is not maintained by the contractor or subcontractor. Settling Defendant shall ensure that all submittals to the EPA under this Paragraph identify the Site name and the civil action number of this case.

## X. PAYMENTS FOR RESPONSE COSTS

37. **Payment for Past Response Costs**. Within 60 days after the Effective Date, Settling Defendant shall pay the EPA $1,800,000. The Financial Litigation Unit ("FLU") of the United States Attorney's Office for the District of Montana shall send Settling Defendant instructions for making this payment, including a Consolidated Debt Collection System ("CDCS") reference number. Settling Defendant shall make such payment by Fedwire Electronic Funds Transfer ("EFT") in accordance with the FLU's instructions, including references to the CDCS Number. Settling Defendant shall send notices of this payment to DOJ and the EPA. If the payment required under this Paragraph is late, Settling Defendant shall pay, in addition to any stipulated penalties owed under Section XIII, an additional amount for Interest accrued from the Effective Date until the date of payment.

38. **Payments by Settling Defendant for Future Response Costs and State Future Response Costs**

a. **Periodic Bills**. On a periodic basis, the EPA will send Settling Defendant a bill for Future Response Costs, including a cost summary listing direct and indirect costs paid by the EPA, its contractors, subcontractors, and DOJ. Settling Defendant may initiate dispute resolution under Section XII regarding a Future Response Cost billing, but only if the dispute relates to one or more of the following issues: (1) whether the EPA has made an arithmetical error; (2) whether the EPA has included a cost item that is not within the definition of Future Response Costs; or (3) whether the EPA has paid excess costs as a direct result of an EPA action that was inconsistent with a specific provision or provisions of the NCP. Settling Defendant must specify in the Notice of Dispute the contested costs and the basis for the objection.

b. **Payment of Bill**. Settling Defendant shall pay the bill, or if it initiates dispute resolution, the uncontested portion of the bill, if any, within 30 days after receipt of the bill. Settling Defendant shall pay the contested portion of the bill determined to be owed, if any, within 30 days after the determination regarding the dispute. Each payment for: (1) the uncontested bill or portion of bill, if late; and (2) the contested portion of the bill determined to be owed, if any, must include an additional amount for Interest accrued from the date of receipt of the bill through the date of payment. Settling Defendant shall make payment at https://www.pay.gov using the "EPA Miscellaneous Payments Cincinnati Finance Center" link, and including references to the Site/Spill ID and DJ numbers listed in ¶ 75 and the purpose of the payment. Settling Defendant shall send notices of this payment to DOJ and the EPA.

c. **State Future Response Costs**. Settling Defendant shall reimburse the DEQ for all independently incurred State Future Response Costs that are not inconsistent with the NCP. In the year following the Effective Date and in other years where State Future Response Costs are paid, the DEQ will exercise best efforts to send Settling Defendant, as appropriate, an annual bill, including a cost summary, requiring payment of State Future Response Costs. Settling Defendant may initiate a dispute under Section XII regarding a State Future Response Cost billing, but only if the dispute relates to one or more of the following issues: (1) whether the DEQ has made an arithmetical error; (2) whether the DEQ has included a cost item that is not within the definition of State Future Response Costs; or (3) whether the DEQ has paid excess costs as a direct result of an DEQ action that was inconsistent with a specific provision or provisions of the NCP. Settling Defendant must specify in the Notice of Dispute the contested costs and the basis for the objection.

d. **Payment of State Future Response Costs**. Settling Defendant shall pay the bill, or if it initiates dispute resolution, the uncontested portion of the bill, if any, within 30 days after receipt of the bill. Settling Defendant shall pay the contested portion of the bill determined to be owed, if any, within 30 days after the determination regarding the dispute. Each payment for: (1) the uncontested bill or portion of bill, if late; and (2) the contested portion of the bill determined to be owed, if any, must include an additional amount for Interest accrued from the date of receipt of the bill through the date of payment. Settling Defendant shall contact the State's Project Officer at least 48 hours prior to initiating the transfer to provide notice of the date and time of the expected transfer and to confirm the wiring instructions and account and

bank routing number. If the State's Project Officer is unavailable, Settling Defendant shall contact the State's Legal Counsel identified in Section XVIII. Settling Defendant shall send written confirmation of the payment to the State as provided in Section XVIII.

39. **Deposit of Payments.**

a. The EPA may, in its unreviewable discretion, deposit the amounts paid under ¶¶ 37 and 38.b in the Fund, in the Columbia Falls Aluminum Plant Special Account, or both. The EPA may, in its unreviewable discretion, retain and use any amounts deposited in the Columbia Falls Aluminum Plant Special Account to conduct or finance response actions at or in connection with the Site, or transfer those amounts to the Fund.

b. The DEQ may, in its unreviewable discretion, deposit the amounts paid under ¶ 38.d in the State Hazardous Waste/CERCLA Special Revenue Account (§75-10-621, MCA), the Environmental Quality Protection Fund (§ 75-10-704, MCA) or other special revenue account established by the DEQ to conduct or finance response actions at or in connection with the Site.

## XI. FORCE MAJEURE

40. "Force majeure," for purposes of this Decree, means any event arising from causes beyond the control of Settling Defendant, of any entity controlled by it, or of its contractors that delays or prevents the performance of any Work despite Settling Defendant's best efforts. Given the need to protect public health and welfare and the environment, the requirement that Settling Defendant exercises "best efforts" to perform the Work includes using best efforts to anticipate any potential force majeure and best efforts to address the effects of any potential force majeure (a) as it is occurring and (b) following the potential force majeure such that any adverse effects are minimized to the greatest extent possible. "Force majeure" does not include financial inability to complete the Work or a failure to achieve the Performance Standards.

41. **Claims of Force Majeure.**

a. If any event occurs for which Settling Defendant will or may claim a force majeure, Settling Defendant shall notify the Agencies by email. The deadline for the notice is seven days after Settling Defendant first knew or should have known that the event would likely delay performance. Settling Defendant are deemed to know of any circumstance of which any contractor of, subcontractor of, or entity controlled by them knew or should have known.

b. To assert a claim of force majeure Settling Defendant must submit, within 14 days after the notice under ¶ 41.a, a further notice to the Agencies that includes: (1) a description of the event and its effect implementation of the Work; (2) a description of all actions taken or to be taken to minimize the adverse effects of the event; (3) a description of and an explanation for the requested excuse or extension; (4) a statement as to whether, in the opinion of Settling Defendant, such event may cause or contribute to an endangerment to public health or welfare, or the environment; and (5) all available proof supporting their claim of force majeure.

c. Failure to submit timely or complete notices under ¶ 41.a or ¶ 41.b regarding an event precludes Settling Defendant from asserting any claim of force majeure regarding that event, provided, however, that EPA may, in its unreviewable discretion, excuse such failure, if it is able to assess to its satisfaction whether the event is a force majeure under ¶ 40 and whether Settling Defendant has exercised its best efforts under ¶ 40.

42. The EPA, after a reasonable opportunity for review and comment by the DEQ, will notify Settling Defendant of its determination whether it is entitled to relief under ¶ 40, and, if so, the excuse of or extension of time for performance of the portion of the Work affected by the force majeure. Any such excuse or extension does not, of itself, excuse or extend the time for performance of any other Work. Settling Defendant may initiate dispute resolution under Section XII regarding EPA's determination within 15 days after receipt of the determination. In any such proceeding, Settling Defendant has the burden of proving that it is entitled to relief under ¶ 40 and that its proposed excuse or extension is warranted under the circumstances.

43. The failure by the EPA to timely complete any activity under the Decree is not a violation of the Decree, provided, however, that if such failure prevents Settling Defendant from timely completing any Work, it may seek relief under this Section.

## XII. DISPUTE RESOLUTION

44. Unless otherwise provided in this Decree, Settling Defendant must use the dispute resolution procedures of this Section to resolve any dispute arising under this Decree. Settling Defendant shall not initiate a dispute challenging the Record of Decision. The United States may enforce any requirement of the Decree that is not the subject of a pending dispute under this Section.

45. **Informal Dispute Resolution**. A dispute will be considered to have arisen when one or more parties sends a written notice of dispute ("Notice of Dispute"). A notice is timely if sent within 30 days after receipt of the EPA notice or determination giving rise to the dispute, or within 15 days in the case of a force majeure determination. Disputes arising under this Decree must in the first instance be the subject of informal negotiations between the parties to the dispute. The period for informal negotiations may not exceed 20 days after the dispute arises, unless the parties to the dispute otherwise agree. If the parties cannot resolve the dispute by informal negotiations, the position advanced by the EPA is binding unless Settling Defendant initiates formal dispute resolution under ¶ 46. By agreement of the parties, mediation may be used during this informal negotiation period to assist the parties in reaching a voluntary resolution or narrowing of the matters in dispute.

46. **Formal Dispute Resolution Between Settling Defendant and the EPA or Between Settling Defendant, the EPA, and State**

a. **Statements of Position**. Settling Defendant may initiate formal dispute resolution by serving on the Plaintiffs, within 20 days after the conclusion of informal dispute resolution under ¶ 45, an initial Statement of Position regarding the matter in dispute. The

Plaintiff or Plaintiffs' responsive Statements of Position are due within 20 days after receipt of the initial Statement of Position. All Statements of Position must include supporting factual data, analysis, opinion, and other documentation. A reply, if any, is due within ten days after receipt of the response. If appropriate, the EPA may extend the deadlines for filing statements of position for up to 45 days and may allow the submission of supplemental statements of position.

b. **Formal Decision**. The Director of the Superfund & Emergency Management Division, EPA Region 8, will issue a formal decision resolving a dispute under this Paragraph ("Formal Decision") based on the statements of position and any replies and supplemental statements of position. The Formal Decision is binding on Settling Defendant unless it timely seeks judicial review under ¶ 48.

c. **Compilation of Administrative Record**. The EPA shall compile an administrative record regarding the dispute, which must include all statements of position, replies, supplemental statements of position, and the Formal Decision.

47. **Formal Dispute Resolution Solely Between Settling Defendant and the State**

a. In the event a dispute should arise solely between Settling Defendant and the State regarding the interpretation or implementation of Paragraph 38.c (State Future Response Costs), 38.d (Payment of State Future Response Costs), or Section XIII (Stipulated Penalties), Settling Defendant and the State shall make a good faith effort to resolve the dispute informally pursuant to Paragraph 45. In the event that Settling Defendant and the State cannot resolve the dispute by informal negotiations, Settling Defendant may initiate formal dispute resolution by serving on the State, within 20 days after the conclusion of informal dispute resolution, an initial Statement of Position regarding the matter in dispute. The State's responsive Statement of Position is due within 20 days after receipt of the initial Statement of Position. All Statements of Position must include supporting factual data, analysis, opinion, and other documentation. A reply, if any, is due within ten days after receipt of the response. Copies of all papers submitted by Settling Defendant or the State in connection with a dispute solely between the Settling Defendant and the State shall also be served on the EPA.

b. The Attorney General of the State will issue a final decision resolving the dispute under this Paragraph based on the statements of position and any replies. The final decision is binding on the Settling Defendant unless it timely seeks judicial review.

48. **Judicial Review**

a. Settling Defendant may obtain judicial review of the Formal Decision by the EPA or the final decision by the Attorney General of the State by filing, within 20 days after receiving it, a motion with the Court and serving the motion on all Parties. The motion must describe the matter in dispute and the relief requested. The parties to the dispute shall brief the matter in accordance with local court rules.

b. **Review on the Administrative Record**. Judicial review of disputes regarding the following issues must be on the administrative record: (i) the adequacy or

appropriateness of deliverables required under the Decree; (ii) the adequacy of the performance of the Remedial Action; (iii) whether a Work Takeover is warranted under ¶ 20; (iv) determinations about financial assurance under Section VIII; (v) whether a reopener condition under ¶ 59 is satisfied, including whether the Remedial Action is not protective of human health and the environment; (vi) EPA's selection of modified or further response actions; (vii) any other items requiring EPA approval under the Decree; and (viii) any other disputes that the Court determines should be reviewed on the administrative record. For all of these disputes, Settling Defendant bears the burden of demonstrating that the Formal Decision was arbitrary and capricious or otherwise not in accordance with law.

c. Judicial review of any dispute not governed by ¶ 48.b is governed by applicable principles of law.

49. **Escrow Account**. For disputes regarding a Future Response Cost or State Future Response Cost billing, Settling Defendant shall: (a) establish, in a duly chartered bank or trust company, an interest-bearing escrow account that is insured by the FDIC; (b) remit to that escrow account funds equal to the amount of the contested Future Response Costs or State Future Response Costs; and (c) send to the EPA, or DEQ for disputes regarding State Future Response Costs, copies of the correspondence and of the payment documentation (e.g., the check) that established and funded the escrow account, including the name of the bank, the bank account number, and a bank statement showing the initial balance in the account. The EPA, or the DEQ for State Future Response Costs, may, in its unreviewable discretion, waive the requirement to establish the escrow account. Settling Defendant shall cause the escrow agent to pay the amounts due to the EPA and the DEQ under ¶ 38, if any, by the deadline for such payment in ¶ 38. Settling Defendant is responsible for any balance due under ¶ 38 after the payment by the escrow agent.

50. The initiation of dispute resolution procedures under this Section does not extend, postpone, or affect in any way any requirement of this Decree, except as the EPA agrees, or as determined by the Court. Stipulated penalties with respect to the disputed matter will continue to accrue, but payment is stayed pending resolution of the dispute, as provided in ¶ 53.

## XIII. STIPULATED PENALTIES

51. Unless the noncompliance is excused under Section XI (Force Majeure), Settling Defendant is liable to the United States and the State (but to the State only for failure to comply with Paragraph 38.c—State Future Response Costs) for the following stipulated penalties:

a. for any failure: (i) to pay any amount due under Section X; (ii) to establish and maintain financial assurance in accordance with Section VIII; (iii) to submit timely or adequate deliverables under Section 7 of the RD/RA SOW; (iv) to submit timely or adequate deliverables under Section 6 of the UAO SOW:

| Period of Noncompliance | Penalty Per Noncompliance Per Day |
|---|---|
| 1st through 14th day | $750 |
| 15th through 30th day | $2,000 |
| 31st day and beyond | $5,000 |

b. for any failure to submit timely or adequate deliverables required by this Decree other than those specified in ¶ 51.a:

| Period of Noncompliance | Penalty Per Noncompliance Per Day |
|---|---|
| 1st through 14th day | $750 |
| 15th through 30th day | $2,000 |
| 31st day and beyond | $5,000 |

52. **Work Takeover Penalty**. If the EPA commences a Work Takeover, Settling Defendant is liable for a stipulated penalty in the amount of $750,000. This stipulated penalty is in addition to the remedy available to the EPA under ¶ 31 (Access to Financial Assurance) to fund the performance of the Work by the EPA.

53. **Accrual of Penalties**. Stipulated penalties accrue from the date performance is due, or the day a noncompliance occurs, whichever is applicable, until the date the requirement is completed or the final day of the correction of the noncompliance. Separate penalties may accrue simultaneously for separate noncompliances with this Decree. Stipulated penalties accrue regardless of whether Settling Defendant has been notified of its noncompliance, and regardless of whether Settling Defendant has initiated dispute resolution under Section XII, provided, however, that no penalties will accrue as follows:

a. with respect to a submission that the EPA subsequently determines is deficient under the SOWs, during the period, if any, beginning on the 31st day after EPA's receipt of such submission until the date that the EPA notifies Settling Defendant of any deficiency;

b. with respect to a matter that is the subject of dispute resolution under Section XII, during the period, if any, beginning on the 21st day after the later of the date that EPA's Statement of Position is received or the date that Settling Defendant's reply thereto (if any) is received until the date of the Formal Decision under ¶ 46.b or ¶ 47.b; or

c. with respect to a matter that is the subject of judicial review by the Court under ¶ 48, during the period, if any, beginning on the 31st day after the Court's receipt of the final submission regarding the dispute until the date that the Court issues a final decision regarding such dispute.

54. **Demand and Payment of Stipulated Penalties**. The EPA or the DEQ may send Settling Defendant a demand for stipulated penalties. The demand will include a description of the noncompliance and will specify the amount of the stipulated penalties owed. Settling Defendant may initiate dispute resolution regarding the demand. Settling Defendant shall pay the amount demanded or, if it initiates dispute resolution, the uncontested portion of the amount

demanded, within 60 days after receipt of the demand. Settling Defendant shall pay the contested portion of the penalties determined to be owed, if any, within 60 days after the resolution of the dispute. Each payment for: (a) the uncontested penalty demand or uncontested portion, if late; and (b) the contested portion of the penalty demand determined to be owed, if any, must include an additional amount for Interest accrued from the date of receipt of the demand through the date of payment. Settling Defendant shall make payment at https://www.pay.gov using the link for "EPA Miscellaneous Payments Cincinnati Finance Center," including references to the Site/Spill ID and DJ numbers listed in ¶ 75, and the purpose of the payment. Settling Defendant shall send a notice of this payment to DOJ and the EPA. The payment of stipulated penalties and Interest, if any, does not alter any obligation by Settling Defendant under the Decree. For payment of stipulated penalties to the DEQ, Settling Defendants shall make payment by following the payment procedures in ¶ 38.d.

55. Nothing in this Decree limits the authority of the United States or the State: (a) to seek any remedy otherwise provided by law for Settling Defendant's failure to pay stipulated penalties or interest; or (b) to seek any other remedies or sanctions available by virtue of Settling Defendant's noncompliances with this Decree or of the statutes and regulations upon which it is based, including penalties under section 122(*l*) of CERCLA, provided, however, that the United States may not seek civil penalties under section 122(*l*) of CERCLA for any noncompliance for which a stipulated penalty is provided for in this Decree, except in the case of a willful noncompliance with this Decree.

56. Notwithstanding any other provision of this Section, the EPA may, in its unreviewable discretion, waive any portion of stipulated penalties that have accrued under this Decree.

## XIV. COVENANTS BY PLAINTIFFS

57. **Covenants for Settling Defendant**. Subject to ¶¶ 59 and 60, the United States covenants not to sue or to take administrative action against Settling Defendant under sections 106 and 107(a) of CERCLA regarding the Site. Subject to ¶¶ 59 and 60, the State covenants not to sue or to take administrative action against Settling Defendant under section 107(a) of CERCLA regarding the Site. Further, subject to ¶¶ 59 and 60, the State covenants not to sue or take administrative action against Settling Defendant under sections 711, 715(2)(a), 722 and 726 of CECRA.

58. The covenants under ¶ 57: (a) take effect upon the Effective Date, except with respect to future liability, for which these covenants take effect upon Certification of Remedial Action Completion by the EPA under ¶ 5.8 of the RD/RA SOW; (b) are conditioned on the satisfactory performance by Settling Defendant of the requirements of this Decree; (c) extend to the successors of Settling Defendant but only to the extent that the alleged liability of the successor of Settling Defendant is based solely on its status as a successor of Settling Defendant; and (d) do not extend to any other person.

59. **Plaintiffs' Pre- and Post-certification Reservations**

a. Notwithstanding any other provision of this Decree, the United States and State reserve, and this Decree is without prejudice to, the right to issue an administrative order or to institute proceedings in this action or in a new action seeking to compel Settling Defendant to perform further response actions relating to the Site, to pay the United States or State for additional costs of response, or any combination thereof. The United States and State may exercise this reservation only if, at any time, conditions at the Site previously unknown to the EPA or the DEQ are discovered, or information previously unknown to the EPA or the DEQ is received, and the EPA determines, based in whole or in part on these previously unknown conditions or information, that the Remedial Action is not protective of human health or the environment.

b. Before Certification of Remedial Action Completion, the information and the conditions known to the EPA or the DEQ include only that information and those conditions known to the EPA as of the date the Record of Decision was signed and set forth in the Record of Decision for the Site and the administrative record supporting the Record of Decision.

c. After Certification of Remedial Action Completion, the information and the conditions known to the EPA or the DEQ include only that information and those conditions known to the EPA or the DEQ as of the date of Certification of Remedial Action Completion and set forth in the Record of Decision, the administrative record supporting the Record of Decision, the post-Record of Decision administrative record, or in any information received by the EPA or the DEQ in accordance with the requirements of this Decree prior to Certification of Remedial Action Completion.

60. **General Reservations**. Notwithstanding any other provision of this Decree, the United States and State reserve, and this Decree is without prejudice to, all rights against Settling Defendant regarding the following:

a. liability for failure by Settling Defendant to meet a requirement of this Decree;

b. liability arising from the past, present, or future disposal, release, or threat of release of Waste Material outside of the Site;

c. liability based on Settling Defendant's ownership of the Site for a purpose other than to effectuate performance of the Work, when such ownership commences after Settling Defendant's signature of this Decree;

d. liability based on Settling Defendant's operation of the Site for a purpose other than the performance of the Work, when such operation commences after Settling Defendant's signature of this Decree and does not arise solely from Settling Defendant's performance of the Work;

e. liability based on Settling Defendant's transportation, treatment, storage, or disposal, or arrangement for transportation, treatment, storage, or disposal of Waste Material at or in connection with the Site for a purpose other than the performance of the Work or as authorized by EPA, after Settling Defendant's signature of this Decree;

f. liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments; and

g. liability, prior to achievement of Performance Standards, for additional response actions that the EPA determines are necessary to achieve and maintain Performance Standards or to carry out and maintain the effectiveness of the Remedial Action, but that are not covered by ¶ 18.b; and

h. criminal liability.

61. Subject to ¶ 57, nothing in this Decree limits any authority of Plaintiffs to take, direct, or order all appropriate action to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from the Site, or to request a Court to order such action.

## XV. COVENANTS BY SETTLING DEFENDANT

62. **Covenants by Settling Defendant**

a. Subject to ¶ 63, Settling Defendant covenants not to sue and shall not assert any claim or cause of action against the United States or the State under CERCLA, section 7002(a) of RCRA, the United States Constitution, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, the State of Montana Constitution, CECRA, State law, or at common law regarding the Site.

b. Subject to ¶ 63, Settling Defendant covenants not to seek reimbursement from the Fund through CERCLA or any other law for costs regarding the Site, Past Response Costs, Future Response Costs, or State Future Response Costs. Settling Defendant covenants not to seek reimbursement or funding under State law, including any direct or indirect claim related to the Site for reimbursement from the Environmental Quality Protection Fund (established pursuant to § 75-10-704, MCA), the Orphan Share Account (established pursuant to § 75-10-743, MCA), or other provision of law regarding the Site, Past Response Costs, State Future Response Costs, or Future Response Costs.

63. **Settling Defendant's Reservation**. The covenants in ¶ 62 do not apply to any claim or cause of action brought, or order issued, after the Effective Date by the United States or the State to the extent such claim, cause of action, or order is within the scope of a reservation under ¶ 59, and ¶¶ 60.a through 60.g.

## XVI. EFFECT OF SETTLEMENT; CONTRIBUTION

64. The Parties agree and the Court finds that: (a) the complaint filed by the United States and State in this action is a civil action within the meaning of section 113(f)(1) of CERCLA; (b) this Decree constitutes a judicially approved settlement under which Settling Defendant has, as of the Effective Date, resolved its liability to the United States and State within the meaning of sections 113(f)(2) and 113(f)(3)(B) of CERCLA and section 719(1) of CECRA; and (c) Settling Defendant is entitled, as of the Effective Date, to protection from contribution actions or claims as provided by section 113(f)(2) of CERCLA and section 719(1) of CECRA, or as may be otherwise provided by law, for the "matters addressed" in this Decree. The contribution protection under the preceding sentence extends to the successors of Settling Defendant but only to the extent that the alleged liability of the successor of the Settling Defendant is based solely on its status as a successor of the Settling Defendant. The "matters addressed" in this Decree are all response actions taken or to be taken and all response costs incurred or to be incurred, at or in connection with the Site, by the United States, the State, or any other person, provided, however, that if the United States or State exercises rights under the reservations in ¶ 59 and ¶¶ 60.a through 60.g, the "matters addressed" in this Decree will no longer include those response costs or response actions that are within the scope of the claim brought under the exercised reservation.

65. Settling Defendant shall, with respect to any suit or claim brought by it for matters related to this Decree, notify DOJ, the EPA, and the State no later than 30 days prior to the initiation of such suit or claim. Settling Defendant shall, with respect to any suit or claim brought against it for matters related to this Decree, notify DOJ, the EPA, and the State within twenty days after service of the complaint on Settling Defendant. In addition, Settling Defendant shall notify DOJ, the EPA, and the State within twenty days after service or receipt of any Motion for Summary Judgment and within ten days after receipt of any order from a court setting a case for trial.

66. **Res Judicata and Other Defenses**. In any subsequent administrative or judicial proceeding initiated against Settling Defendant by either Plaintiff for injunctive relief, recovery of response costs, or other appropriate relief relating to the Site, Settling Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, claim preclusion (res judicata), issue preclusion (collateral estoppel), claim-splitting, or other defenses based upon any contention that the claims raised by the United States or the State in the subsequent proceeding were or should have been brought in the instant case.

67. Nothing in this Decree diminishes the right of the United States or State under section 113(f)(3) of CERCLA or section 719(1) of CECRA to pursue any person not a party to this Decree to obtain additional response costs or response action and to enter into settlements that give rise to contribution protection pursuant to section 113(f)(2) of CERCLA and section 719(1) of CECRA.

## XVII. RECORDS

68. **Settling Defendant Certification**. Settling Defendant certifies that: (a) to the best of its knowledge and belief after thorough inquiry, it has not altered, mutilated, discarded,

destroyed or otherwise disposed of any documents and electronically stored information relating to the Site, including information relating to its potential liability under CERCLA and CECRA regarding the Site, since the earlier of notification of potential liability by the United States or the State or the filing of suit against it regarding the Site; and (b) it has fully complied with any and all EPA and State requests for information under sections 104(e) and 122(e) of CERCLA, and section 3007 of RCRA, and State law.

69. **Retention of Records and Information**

a. Settling Defendant shall retain, and instruct its contractors and agents to retain, the following documents and electronically stored data ("Records") until ten years after the Certification of Work Completion under the RD/RA SOW ¶ 5.10 (the "Record Retention Period"):

(1) All records regarding Settling Defendant's liability under CERCLA regarding the Site;

(2) All reports, plans, permits, and documents submitted to the EPA in accordance with this Decree, including all underlying research and data; and

(3) All data developed by, or on behalf of, Settling Defendant in the course of performing the Remedial Action.

b. Settling Defendant shall maintain Records that were originally created in an electronic format in their native format or in a reasonably accessible format and shall keep them reasonably organized. Unmarked paper printouts of electronic records maintained in accordance with this Paragraph will be considered duplicates or convenience copies and need not be preserved.

c. At the end of the Record Retention Period, Settling Defendant shall notify the EPA that it has 90 days to request the Settling Defendant's Records subject to this Section. Settling Defendant shall retain and preserve its Records subject to this Section until 90 days after EPA's receipt of the notice. These record retention requirements apply regardless of any corporate record retention policy.

d. Any Record originally created in paper format may be discarded if Settling Defendant creates an electronic copy of the Record following the standards applicable for digitizing permanent federal records under 36 C.F.R. § 1236.40 through § 1236.56. The digitized copy of such Record must be retained in accordance with this Section and is admissible to the same extent as the original paper Record.

70. Settling Defendant shall provide to the EPA and the State, upon request, copies of all Records and information required to be retained under this Section. Settling Defendant shall also make available to the EPA and the State, for purposes of investigation, information

gathering, or testimony, its employees, agents, or representatives with knowledge of relevant facts concerning the performance of the Work.

71. **Privileged and Protected Claims**

a. Settling Defendant may assert that all or part of a record requested by Plaintiffs is privileged or protected as provided under federal law, in lieu of providing the record, provided that Settling Defendant complies with ¶ 71.b, and except as provided in ¶ 71.c.

b. If Settling Defendant asserts a claim of privilege or protection, it shall provide Plaintiffs with the following information regarding such record: its title; its date; the name, title, affiliation (e.g., company or firm), and address of the author, of each addressee, and of each recipient; a description of the record's contents; and the privilege or protection asserted. If a claim of privilege or protection applies only to a portion of a record, Settling Defendant shall provide the record to Plaintiffs in redacted form to mask the privileged or protected portion only. Settling Defendant shall retain all records that they claim to be privileged or protected until Plaintiffs have had a reasonable opportunity to dispute the privilege or protection claim and any such dispute has been resolved in Settling Defendant's favor.

c. Settling Defendant shall not make any claim of privilege or protection regarding: (1) any data regarding the Site, including all sampling, analytical, monitoring, hydrogeologic, scientific, chemical, radiological or engineering data, or the portion of any other record that evidences conditions at or around the Site; or (2) the portion of any record that Settling Defendant is required to create or generate in accordance with this Decree.

72. **Confidential Business Information ("CBI") Claims**. Settling Defendant is entitled to claim that all or part of a record submitted to Plaintiffs under this Decree is CBI that is covered by section 104(e)(7) of CERCLA and 40 C.F.R. § 2.203(b). Settling Defendant shall segregate all records or parts thereof submitted under this Decree which it claims are CBI and label them "claimed as confidential business information" or "claimed as CBI." Records that Settling Defendant properly label in accordance with the preceding sentence will be afforded the protection specified in 40 C.F.R. part 2, subpart B. If any record is not properly labeled when it is submitted to the EPA and the State, or if the EPA notifies Settling Defendant that the record is not entitled to confidential treatment under the standards of section 104(e)(7) of CERCLA or 40 C.F.R. part 2, subpart B, the public may be given access to such record without further notice to Settling Defendant.

73. In any proceeding under this Decree, validated sampling or monitoring data generated in accordance with the SOWs and reviewed and approved by the EPA, if relevant to the proceeding, is admissible as evidence, without objection.

74. Notwithstanding any provision of this Decree, Plaintiffs retain all of their information gathering and inspection authorities and rights, including enforcement actions related thereto, under CERCLA, RCRA, CECRA, and any other applicable statutes or regulations.

## XVIII. NOTICES AND SUBMISSIONS

75. All agreements, approvals, consents, deliverables, modifications, notices, notifications, objections, proposals, reports, waivers, and requests specified in this Decree must be in writing unless otherwise specified. Whenever a notice is required to be given or a report or other document is required to be sent by one Party to another under this Decree, it must be sent as specified below. All notices under this Section are effective upon receipt, unless otherwise specified. In the case of emailed notices, there is a rebuttable presumption that such notices are received on the same day that they are sent. Any Party may change the method, person, or address applicable to it by providing notice of such change to all Parties.

| | |
|---|---|
| As to DOJ: | *via email to*:<br>eescdcopy.enrd@usdoj.gov<br>Re: DJ # 90-11-3-12932 |
| As to the EPA: | *via email to*:<br>EPA's Project Coordinator, Archer.Allie@epa.gov<br>*and*<br>Site Attorney, Wright.Paige@epa.gov<br>*and*<br>Site Attorney, Castelli.Kayleen@epa.gov<br>Re: Site/Spill ID # A882 |
| As to the Regional Financial Management Officer: | *via email to*:<br>Dinnocenzo.Benjamin@epa.gov<br>Re: Site/Spill ID # A882 |
| As to the State: | *via email to:*<br>State's Project Coordinator, RSloan@mt.gov<br>*and*<br>Section Supervisor, Kevin.Stone@mt.gov<br>*and*<br>Legal Counsel, JMorgan3@mt.gov<br>Re: Columbia Falls Reduction Plant Superfund Site |
| As to Settling Defendant: | *via email to*:<br>Project Coordinator, John.Stroiazzo@glencore-us.com<br>*and*<br>Legal Counsel, andrew.otis@hsfkramer.com |

## XIX. APPENDIXES

76. The following appendixes are attached to and incorporated into this Decree:

"Appendix A" is the Record of Decision.

"Appendix B" is the RD/RA SOW.

"Appendix C" is the map of the Site.

"Appendix D" is the UAO SOW.

## XX. MODIFICATIONS TO DECREE

77. Except as provided in ¶ 18 of the Decree and the SOWs (Approval of Deliverables), nonmaterial modifications to Sections I through XXIV and the Appendixes must be in writing and are effective when signed (including electronically signed) by the Parties. Material modifications to Sections I through XXIV and the Appendixes must be in writing, signed (which may include electronically signed) by the Parties, and are effective upon approval by the Court.

## XXI. SIGNATORIES

78. The undersigned representative of the United States, the undersigned representative of the State, and the undersigned representative of Settling Defendant certifies that he or she is fully authorized to enter into the terms and conditions of this Decree and to execute and legally bind such Party to this document.

## XXII. PRE-ENTRY PROVISIONS

79. If for any reason the Court should decline to approve this Decree in the form presented, this agreement, except for ¶ 80 and ¶ 81, is voidable at the sole discretion of any Party and its terms may not be used as evidence in any litigation between the Parties.

80. This Decree will be lodged with the Court for at least 30 days for public notice and comment in accordance with section 122(d)(2) of CERCLA and 28 C.F.R. § 50.7. The State will also conduct its own public comment period for at least 30 days in accordance with section 75-10-713, MCA. The Plaintiffs may withdraw or withhold their consent if the comments regarding the Decree disclose facts or considerations that indicate that the Decree is inappropriate, improper, or inadequate.

81. Settling Defendant agrees not to oppose or appeal the entry of this Decree.

## XXIII. INTEGRATION

82. This Decree constitutes the entire agreement among the Parties regarding the subject matter of the Decree and supersedes all prior representations, agreements, and understandings, whether oral or written, regarding the subject matter of the Decree.

## XXIV. FINAL JUDGMENT

83. Upon entry of this Decree by the Court, this Decree constitutes a final judgment under Fed. R. Civ. P. 54 and 58 between the Parties.

DATED this 12th day of November, 2026.

WILLIAM W. MERCER
UNITED STATES DISTRICT JUDGE

Signature Page for Decree in *U.S. v. Columbia Falls Aluminum Co.* (D. Montana)

**FOR THE UNITED STATES:**

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
U.S. Department of Justice
Environment and Natural Resources Division

JONAH BROWN Digitally signed by JONAH BROWN
Date: 2026.06.30 14:07:08 -06'00'

______________ Dated

JONAH BROWN
Trial Attorney
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section

6/29/2026
Dated

MARK STEGER SMITH
Acting United States Attorney
District of Montana

6/29/2026
Dated

RANDY TANNER
Chief, Civil Division
District of Montana

Signature Page for Decree in *U.S. v. Columbia Falls Aluminum Co.* (D. Montana)

**FOR THE U.S. ENVIRONMENTAL PROTECTION AGENCY:**

CYRUS WESTERN Digitally signed by CYRUS WESTERN Date: 2026.05.14 10:32:08 -06'00'

______________ Dated

CYRUS WESTERN
Regional Administrator
U.S. Environmental Protection Agency
Region 8

AARON URDIALES Digitally signed by AARON URDIALES Date: 2026.05.08 12:36:03 -06'00'

______________ Dated

AARON URDIALES
Division Director
Superfund & Emergency Management Division
U.S. Environmental Protection Agency
Region 8

KENNETH SCHEFSKI Digitally signed by KENNETH SCHEFSKI Date: 2026.05.07 09:56:56 -06'00'

______________ Dated

KENNETH C. SCHEFSKI
Regional Counsel
U.S. Environmental Protection Agency
Region 8

PAIGE WRIGHT Digitally signed by PAIGE WRIGHT Date: 2026.05.05 11:09:12 -06'00'

______________ Dated

PAIGE LAMBERT WRIGHT
Assistant Regional Counsel
U.S. Environmental Protection Agency
Region 8

KAYLEEN CASTELLI Digitally signed by KAYLEEN CASTELLI Date: 2026.04.30 12:57:06 -06'00'

______________ Dated

KAYLEEN CASTELLI
Assistant Regional Counsel
U.S. Environmental Protection Agency
Region 8

Signature Page for Decree in *U.S. v. Columbia Falls Aluminum Co.* (D. Montana)

**FOR THE STATE OF MONTANA:**

5/5/26
Dated

GREG GIANFORTE
Governor of the State of Montana

4/30/26
Dated

SONJA NOWAKOWSKI
Director
Montana Department of Environmental Quality

4/30/26
Dated

JONATHAN MORGAN
Legal Counsel
Montana Department of Environmental Quality

Signature Page for Decree in *U.S. v. Columbia Falls Aluminum Co.* (D. Montana)

**FOR:** Columbia Falls Aluminum Company, LLC

Digitally signed by Cheryl Ann Driscoll
Date: 2025.09.26 15:16:09 -04'00'

____________
Dated

CHERYL DRISCOLL
Corporate Secretary
330 Madison Ave
New York, NY 10017

If the Decree is not approved by the Court within 60 days after the date of lodging, and the United States requests, Settling Defendant agrees to accept service of the complaint by mail, and to execute a waiver of service of a summons under Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court. **This Settling Defendant hereby designates the agent below to accept service of the complaint by mail and to execute the Rule 4 waiver of service.** Settling Defendant understands that it does not need to file an answer to the complaint until it has executed the waiver of service or otherwise has been served with the complaint.

Name: Cheryl Driscoll
Title: Corporate Secretary
Company: Columbia Falls Aluminum Company, LLC
Address: 330 Madison Ave
New York, NY 10017
Phone: 646-949-2420
email: cheryl.driscoll@glencore-us.com